JOHN B. MOODY and MARY MOODY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moody v. Commissioner
Docket Nos. 1922-70, 1939-70.
United States Tax Court
T.C. Memo 1973-216; 1973 Tax Ct. Memo LEXIS 70; 32 T.C.M. (CCH) 999; T.C.M. (RIA) 73216; October 3, 1973, Filed Lyman Ingram, for the petitioners. John M. Wylie, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: [1] The respondent determined deficiencies in income taxes and additions to the 2 tax pursuant to section 6653(b) [2] to be due as follows: Docket No.
Year
Petitioner(s)
Deficiency in Income Tax
Addition to Tax § 6653(b) 1922-70
1955
John B. Moody & Mary Moody
$1,673.66
$ 836.83
1922-70
1956
John B. Moody & Mary Moody
3,131.66
1,565.83
1939-70
1957
John B. Moody
4,877.25
2,438.63
1922-70
1958
John B. Moody & Mary Moody
3,101.22
1,550.61
1922-70
1959
John B. Moody & Mary Moody
5,425.13
2,712.57
Certain concessions having been made by the parties, those issues remaining for decision are as follows: (1) Whether the respondent is barred by the period of limitations from the assessment and collection *72 of deficiencies in income taxes and additions to the tax for the taxable years 1955 to 1959, inclusive. (2) Whether any part of the underpayment of taxes by John B. Moody for the taxable year 1955 is due to fraud. [3] 3 (3) Whether respondent correctly included in petitioner's income for each of the years in question amounts paid in cash for professional expenses. (4) Whether a deposit of $742.50 to petitioner's checking account on January 4, 1955, consisted of income received partly in 1954 and partly in 1955. (5) Whether respondent correctly included in petitioner's income for *73 1956 the sum of $843.49, representing an additional amount of cash on hand for such year. (6) Whether petitioner is entitled to a business expense deduction in the amount of $132.33, or in the alternative a deduction for depreciation, representing the cost of carpet installed in his office in 1958. (7) Whether respondent correctly included in petitioner's income for 1959 the sum of $4,000, representing an increase in petitioner's cash on hand at the end of such year. 4 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The petitioners, [4] John B. Moody and Mary Moody are husband and wife whose legal residence at the time of the filing of the petitions herein was in Dyersburg, Tennessee. Joint Federal income tax returns were timely filed by petitioners for the taxable years 1955 and 1956 with the district director of internal revenue, Nashville, Tennessee. For the taxable year 1957, John B. Moody timely filed an individual Federal income tax return with the district director of internal revenue, Nashville, Tennessee. *74 For the taxable years 1958 and 1959, John B. Moody timely filed individual Federal income tax returns with the district director of internal revenue, Nashville, Tennessee. Subsequently, on October 16, 1961, John B. Moody and Mary Moody filed joint Federal income tax 5 returns covering the taxable years 1958 and 1959 with the district director of internal revenue, Nashville, Tennessee. The only difference between the return initially filed for the taxable year 1958 and the return filed on October 16, 1961, was that joint rates were claimed on the latter. The only difference between the return initially filed for the taxable year 1959 and the return filed on October 16, 1961, was that three additional exemptions and joint rates were claimed on the latter. On April 24, 1963, a Federal grand jury returned a four-count indictment in the U.S. District Court for the Western District of Tennessee charging petitioner with tax evasion for the taxable years 1956, 1957, 1958 and 1959. On September 18, 1963, petitioner was found guilty as charged in the indictment. On November 27, 1964, the judgment of the District Court was reversed by the Court of Appeals for the Sixth Circuit and *75 the case was remanded for a new trial. [5] 6 The petitioner was again tried before a jury on March 29, 1965, and found guilty on all four counts as charged in the indictment. That conviction was appealed to the Sixth Circuit Court of Appeals, which affirmed the conviction and remanded the case for reconsideration of the prison sentence. [6] Petitioner filed a petition for writ of certiorari with the United States Supreme Court which was denied on April 17, 1967. [7]
Pursuant to Rule 35 of the Federal Rules of Criminal Procedure, petitioner filed a motion for reconsideration of his sentence with the District Court. After hearing, that motion was denied. Petitioner appealed to the Sixth Circuit, which affirmed the judgment of the District Court. [8] Petitioner again filed a petition for writ of certiorari with the Supreme Court, which was denied on May 20, 1968. [9]
*76 7 The statutory notices of deficiency for the years in question were not issued to petitioners until December 30, 1969. With respect to the year 1957, on February 21, 1961, petitioner executed a Form 872 extending the time for assessment of any deficiency for that year until October 15, 1961. Throughout each of the years in question, petitioner was a licensed physician practicing internal medicine in Dyersburg, Tennessee. In addition to his private patients, petitioner was retained as local physician for the Illinois Central Railroad and Dyer County. During each of the years 1955 to 1959, inclusive, petitioner maintained his records on a cash basis method of accounting. For each year petitioner maintained a "Physician's Daily Record Book" in which income and expenses from his medical practice were recorded. Petitioner also kept a system of cards, referred to as "patient cards," which accompanied a patient to the examination room. The information 8 pertaining to the patient's account was entered on the cards solely by Dr. Moody. That information was then posted to the Physician's Daily Record by petitioner's bookkeeper. Petitioner maintained a checking account *77 at the Dyersburg State Bank at all times here relevant. He had no other bank account of any kind. All deposits to petitioner's account were made personally by Dr. Moody and no one else had access to the statements pertaining to that bank account. For the taxable years 1956 to 1959, inclusive, petitioner's returns were prepared from the respective Physician's Daily Record Books by his bookkeeper's husband. The preparer of the returns did not have access to any information relating to petitioner's bank account nor did he see the patient cards. It is unclear from the record whether Dr. Moody personally, or a third party at his request, prepared his income tax return for the taxable year 1955. The total income received for services rendered, exclusive of amounts received from the Illinois Central 9 Railroad and Dyer Country, and total business expenses incurred and paid, as recorded in the respective Physician's Daily Record Book, were as follows: 1955
1956
1957
1958
1959 Gross Receipts
$14,170.00
$15,870.00
$19,683.00
$21,598.00
$24,283.00
Business Expenses
13,810.37
13,267.46
17,930.43
17,530.58
24,093.86
In November, 1960, *78 a Special Agent and an Internal Revenue Agent were assigned to investigate petitioner's tax returns, initially for the years 1957 to 1959, inclusive, and thereafter for the years 1955 and 1956 as well. As a part of that investigation an analysis of petitioner's bank deposits and cash expenditures was made to determine petitioner's income.A combined computation of the bank deposits and cash expenditures analysis set forth in the statutory notices herein, adjusted to reflect concessions made by the respondent, is as follows: 10 1955
1956
1957
1958
1959 Total Deposits - John B. Moody Checking Account, Dyersburg State Bank
$24,078.64
$26,301.98
31,.098.33
$36,890.00
$38,487.24
Less:
Loans Deposited
-0-
-0-
(2,000.00)
(7,500.00)
-0-
Redeposits - bad checks
(33.00)
(105.00)
(562.00)
(85.00)
(221.00)
Non-income deposits
(683.69)
(599.88)
(284.41)
(2,114.45)
(1,462.32)
Proceeds of inheritance deposited
(2,099.18)
-0-
-0-
-0-
-0-
Refund - Home Beneficial Life Ins. Co.
-0-
-0-
-0-
-0-
(15.00)
Miscellaneous
-0-
-0-
(102.50)
-0-
Net Taxable Deposits
$21,262.77
$25,597.10
$28,149.42
$27,191.54
$36,788.92
Add:
Furniture and appliances purchased by cash
345.00
-0-
-0-
507.56
103.00
Professional expenses paid by cash
524.66
713.48
489.67
943.32
1,112.69
Loan repayments by cash - Dyersburg State Bank
3,000.00
2,377.20
5,000.00
3,500.00
5,000.00
Loan repayments by cash - First Citizen National Bank
-0-
-0-
-0-
-0-
893.00
Payments on automobiles by cash
-0-
997.99
303.85
-0-
-0-
Personal living expenses paid by cash
1,000.00
1,000.00
1,000.00
1,000.00
1,000.00
Increase in cash on hand
-0-
-0-
-0-
-0-
4,000.00
Total Gross Income
$26,132.43
$30,685.77
$34,942.94
$33,142.42
$48,897.61
Less:
Professional Expenses
(14,002.17)
(13,392.84)
(16,218.34)
(16,236.55)
(22,241.65)
Capital loss
(159.08)
-0-
-0-
-0-
-0-
Adjusted Gross Income
$11,971.18
$17,292.93
$18,724.60
$16,905.87
$26,655.96
Reported Per Return
2,335.75
2,584.90
3,639.64
5,577.56
5,021.18
Unreported Income [10]
$9,635.43
$14,708.03
$15,084.96
$11,328.31
$21,634.78
*79 11 In making the foregoing analysis, respondent's agents first totalled all deposits to Dr. Moody's checking account for each of the respective years. From these totals, the amounts of any non-income deposits (loans, inheritances, redeposits of bad checks, etc.), were subtracted to arrive at "net taxable deposits." Additional cash available to petitioner, in the form of expenditures made in cash rather than by check and an admitted increase in cash on hand in 1959, was then added to "net taxable deposits" to determine the total gross income received by petitioner during each of the years in question. To determine which business expenses were paid in cash in each year, respondent's agents compared a transcript of all business expenses recorded in petitioner's Physician's Daily Record Books with available cancelled checks and amounts appearing as withdrawals on the bank ledger sheets. Those expenses for which no *80 check or withdrawal was found were determined to have been paid in cash and were added to petitioner's income as indicated above. Those expenses paid by check or 12 withdrawal were not added to income. Regardless of whether the expense was paid in cash or by check, a corresponding deduction was permitted for the expenses incurred in petitioner's business. In rebuttal of two items of expense included by respondent as having been paid in cash, petitioner introduced two checks at the trial indicating the following: Date of Check
Payee
Amount April 25, 1959
Esso
$138.65
July 8, 1958
George A. Breon & Co.
6.00
The Physician's Daily Record Book for the year 1958 listed the following expenses: Date of Expense
Party Paid
Item Amount April, 1958
Esso
Auto Expense
$138.65
May, 1958
Esso
Auto Expense
138.65
June, 1958
George A. Breon
Drugs & Supplies
6.00
July, 1958
George A. Breon
Drugs & Supplies
6.00
Respondent's computation of professional expenses paid in cash did not include the items of April, 1958 and July, 1958 paid by check as noted above. Payment 13 of the items of May, 1958 and June, 1958 contained *81 in the Physician's Daily Record Book, was not represented by the checks introduced by petitioner. Petitioner introduced no other checks or evidence indicating that any of the expenses included in this manner by respondent were paid by any means other than cash. Respondent's agents also examined the microfilm of the Dyersburg State Bank for each day that petitioner made a deposit. The microfilm examined contained only checks deposited to petitioner's account which were drawn on out of town banks. The amounts of those checks were then correlated to petitioner's Physician's Daily Record Books. The following checks were omitted 14 from the Physician's Daily Record Book for the year 1955: Name of Patient or Party Making Payment
Date of Payment
Amount of Payment
Amount Recorded on Physician's Daily Record Book C. E. Haley
1/21/55
$ 18.00
$ -0-
McDeaman Hansbrough
3/7/55
7.50
-0-
Jackie Page
3/26/55
75.00
-0-
Donald E. Holt
4/14/55
7.50
-0-
C. E. Haley
4/20/55
6.00
-0-
Betty Hudgins
4/25/55
2.00
-0-
Robert Harris
5/26/55
50.00
-0-
Ruth E. Parker
6/6/55
7.50
-0-
C. B. Lucas
6/8/55
63.00
-0-
Witson L. Brannon
7/6/55
5.00
-0-
John R. Ferguson, Sr.
7/9/55
25.00
-0-
Birdie Vaughn
9/21/55
50.00
-0-
Marshall L. Morrison
11/7/55
7.50
-0-
Joe P. Tipton
12/5/55
30.00
-0-
Total
$354.00
$-0-
*82 Petitioner admits that the foregoing were omitted from his income in 1955. During the course of numerous interviews held by respondent's agents, Dr. Moody was questioned as to the amount of cash he had on hand at the end of each of the years in issue. In response, petitioner executed 15 an affidavit on July 26, 1961, which stated in pertinent part: I further swear that I have never at any time in the past had cash or unregistered securities stored in any safety deposit box, buried, hidden, or otherwise stored in any place except that during the period January 1, 1955 through December 31, 1960 I have accumulated some cash which was kept in my office or on my person. The maximum amounts which I had in currency would be as follows: 12-31-54
$1,000.00
12-31-55
$1,000.00
12-31-56
$1,000.00
12-31-57
$1,000.00
12-31-58
$1,000.00
12-31-59
$5,000.00
12-31-60
$3,200.00
However, it is my usual practice to deposit currency in the bank except for cash receipts kept out for a short period of time for use in the business and this would never amount to over $5,000.00 and usually would not amount to over $1,000.00 as shown above. * * * It has been my *83 policy to deposit any currency in my bank account except for the amounts already shown. These deposits have been made as soon as practicable after the receipt of the money. 16 At the trial the petitioner claimed that the $5,000 referred to was money he had borrowed from one Eddie Adkins. The petitioner failed to present credible evidence of such loan. [11]
On December 31, 1954, petitioner deposited to his checking account at Dyersburg State Bank the sum of $167.24. On January 4, 1955, the following Tuesday, he made a deposit to that account of $742.50. On January 17, 1956, petitioner purchased from Roberts Chevrolet Company in Dyersburg, Tennessee, a new 1956 Chevrolet. The invoice covering the transaction indicates that the amount of $843.49 was paid in cash as a down payment. 17 The deposit of $300 made to petitioner's checking account on March 8, 1956, represented the refund of this exchange. [12]
*84 On August 23, 1958, petitioner paid to H & W Carpet Center the amount of $132.33. The check by which such amount was paid indicates that the amount represented the cost of installation of carpet. Petitioner testified, and respondent does not dispute, that the carpet was installed in his office. 18 OPINION Applicability of the Statute of Limitations The petitioner contends that the assessment of any deficiency for the years 1955 to 1959, inclusive, is barred by the statute of limitations. Section 6501(a) provides that the amount of any tax must be assessed within 3 years after the return was filed. An exception to the general rule is provided by section 6501(c) (1) which provides: (c) Exceptions. - (1) False Return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. With respect to the years 1956 to 1959, inclusive, petitioner admits that he is estopped from denying fraud by virtue of his conviction for income tax evasion for those years. However, there was no criminal prosecution for the taxable year 1955 and respondent *85 therefore has the burden of proving fraud before the addition to the tax section 6653(b) may 19 be sustained. Section 7454(a). Therefore, unless fraud be proved for 1955, the statute of limitations on assessment and collection of any deficiency for that year has expired. Section 6501(a) and (c). It has long been held that the existence of fraud is a question of fact to be determined upon consideration of the entire record. M. Rea Gano, 19 B.T.A. 518 (1930). Fraud is never imputed and should not be found upon circumstances which at most create suspicion. Estate of Dorothy E. Beck, 56 T.C. 297 (1971); Tsuneo Otsuki, 53 T.C. 96 (1969). Rather, the intention to defraud must be established by clear and convincing evidence. Biggs v. Commissioner, 440 F.2d 1 (C.A. 6, 1971); Jackson v. Commissioner, 380 F.2d 661 (C.A. 6, 1967), certiorari denied 389 U.S. 1015 (1967). We find respondent's proof with respect to the issue of fraud for the taxable year 1955 to be both clear and convincing. One of the clearest indicia of fraud is the consistent understatement of income. Kurnick v. Commissioner, 232 F.2d 678 *86 (C.A. 6, 1956). In the 20 year 1955, petitioner admittedly did not include fourteen specific items of income aggregating $354. By way of explanation, petitioner makes the bare assertion that the omission was erroneous, but not made with fraudulent intent. However, he makes no explanation of how the "error" was committed. The only conclusion which may be drawn is that there was none. Notwithstanding that the total amount of the foregoing specific items omitted is relatively small, the resulting understatement of income is indicative of fraud. This is especially true in light of the fact that these items represented only those checks drawn on out of town banks. The only logical inference is that checks drawn on local banks, copies of which were not available to the investigating agents, accounted for the balance of the unexplained deposits for the year 1955. With the exception of one deposit of $742.50 on January 4, 1955 (dealt with specifically infra), petitioner apparently accepts respondent's computation of his gross income, taxable income and ultimately, his unreported income, with little or no reservation. 21 This is not a case where the deficiency and assertion *87 of fraud are founded on the disallowance of business expenses. In fact, respondent's computation for 1955 allows such expenses in excess of amounts claimed. Yet petitioner has offered no explanation of the source of the deposits. The unaccounted for omission by the petitioner of substantial income from his 1955 return establishes the fraudulent intent. Accordingly, under the express terms of the statute, assessment against the petitioner for the years 1955 to 1959, inclusive, is not barred by the statute of limitations. Regardless of the statute, petitioner contends that the Commissioner is estopped from assessment and collection of the tax tecause the statutory notices were not sent to petitioners until December 30, 1969, some 8 years after the information became available upon which an assessment could be made. We find petitioner's argument without merit. He seeks to penalize the Government for a problem of his own making. See Olshausen v. Commissioner, 273 F.2d 23 (C.A. 9, 1959). Even assuming that the 22 doctrine of laches were applicable to the Government, cf. U.S. v. Summerlin, 310 U.S. 414 (1940); Guaranty Trust Co. v. U.S., 304 U.S. 126 (1938); *88 Elizabeth Lewis Saigh, 36 T.C. 395 (1961), from the record it is apparent that petitioner was no less at fault for any delay than was respondent. Further, the elements of an estoppel simply are not present. Additional Cash Available In determining petitioner's total gross income for each year, respondent's agents added to petitioner's net bank deposits additional cash available to him as determined from professional expenses paid in cash. To find the amount of such cash expenditures, respondent made a detailed analysis of the expenses listed in the Physician's Daily Record Book and then compared those expenses with available cancelled checks and bank ledger statements. Those expenses for which a check or withdrawal was found were not added to income. Those 23 expenses for which no check or withdrawal was found were added to income since they represented additional cash available to petitioner. In either event, an appropriate deduction was permitted for all business expenses, whether paid by check or in cash. In contesting respondent's determination with respect to this issue, petitioner introduced two checks, the details of which are set out more fully *89 in our findings. Those two checks were for recurring items of the same amount. Respondent did not include the amounts of the expenses paid by those checks in his computation of additional cash available to petitioner. Other than the two checks, which are of no probative value to petitioner's case, petitioner has introduced no evidence from which we might conclude that any of the expenses included by respondent as having been paid in cash, were paid by any other means. He makes only the assertion that "it appears that petitioner is entitled to have many of these items deducted from his gross income, if they were paid by check." [Emphasis supplied.] We have been shown no 24 evidence that any of the cash items included by respondent were in fact paid by check. Respondent's computation in this respect is therefore sustained. Total Deposits, 1955 On January 4, 1955, a Tuesday, petitioner deposited to his checking account the sum of $742.50. On December 31, 1954, the preceding Friday, he deposited the sum of $167.24. In determining petitioner's income for 1955, respondent included the total amount of $742.50 as income received in that year. Petitioner contests that *90 determination, arguing that at least a portion of the deposit represented income received in 1954. Petitioner has presented no evidence other than his own uncorroborated testimony to support the conclusion that amounts received in 1954 were included in the deposit made on January 4, 1955, and, even if such proof were available, the record is devoid of any indication of what portion represented 1954 income. The bare assertion that "it is safe to assume that at least half of the deposit was 1954 25 income" does not meet petitioner's burden of proof. To the contrary, any assumptions which might be made from the facts presented are more likely to support the respondent. Additional Cash - 1956 On January 17, 1956, petitioner purchased an automobile from a Chevrolet dealer in Dyersburg, Tennessee. Upon examining the invoice from the purchase during the course of their investigation, respondent's agents concluded that the sum of $843.49 was paid in cash as a down payment on the automobile. Therefore, that amount was added to the computation of the petitioner's income for that he received a refund of $300 representing an overcharge on the price of the car. He thus argues that *91 the amount added to his income should be reduced by the amount of $300. From the evidence of record, we are convinced that the overcharge was made on this particular 26 transaction and that a refund of that overcharge was made within a relatively short period of time thereafter. We are also convinced that the $300 received was twice added to petitioner's income. In an examination so thorough as was respondent's in the present case, such a $300 item must be presumed to have been included in some other portion of respondent's computation. We note for example that a deposit of $300 appears on the bank ledger sheet on March 8, 1956, approximately the date on which the dealer said the money would have been refunded. Further, respondent's analysis of petitioner's deposits for that day indicates that the $300 deposit was a single item in the form of a credit note. From the foregoing we find that the amount of $300 refunded to petitioner by Roberts Chevrolet should be deducted from the amount of $843.49 paid in cash by petitioner in 1956 and added by respondent in determining petitioner's gross income. 27 Deduction for Carpeting, 1958 Respondent has disallowed the amount *92 of $132.33 claimed as a business expense for the year 1958 representing the cost of installing carpet in petitioner's office. Petitioner concedes that the cost of both the carpet and its installation must be amortized over the life of the carpet. In the absence of any proof of the cost of the carpet, petitioner contends that "the cost of carpet is approximately five (5) to six (6) times greater than the cost of installation." Therefore, he argues, using a ten-year useful life for such carpet, he would be entitled to a deduction in 1958 and 1959 for depreciation of at least $79.40. [13]
We must disagree, at least in part. In the absence of proof, we are unable to find any cost for the carpet. Therefore, no deduction for depreciation of the carpet itself is allowable. 28 On the other hand, we find that the installation cost is amortizable over a ten-year useful life, which is a reasonable period for such an asset. We do note, however, that the carpet was not installed until August of 1958, so that the depreciation *93 deduction for 1958 must be prorated for the number of months it was actually in use. Sec. 1.167(a)-10(b), Income Tax Regs.
Increase in Cash on Hand, 1959 In his computation of petitioner's income for 1959, respondent included an increase in petitioner's cash on hand of $4,000 based upon petitioner's admission that at the end of 1959 he had cash on hand of $5,000 as opposed to $1,000 at the end of 1958. Petitioner does not deny the increase, but asserts that it was due to monies loaned him by one Eddie Adkins. Petitioner produced no note or other evidence of indebtedness in support of such assertion. Also, notwithstanding that Eddie Adkins was known by petitioner to be residing in petitioner's hometown, he was not called as a witness in this case. From this, it may be presumed that if his testimony were 29 produced it would be unfavorable to petitioner. Wichita Terminal Elevator Co., 6 T.C. 1158 (1946), affd. 162 F.2d 513 (C.A. 10, 1947). [14] Petitioner has not established that the increase in his cash on hand was attributable to a none-income source. *94 In accordance with the foregoing, Decision will be entered under Rule 50. Footnotes
1. Pursuant to the order of the Chief Judge of this Court dated August 9, 1973, these cases were reassigned from Judge Austin Hoyt to Judge William H. Quealy↩. 2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
3. Mary Moody is a petitioner herein by reason of having filed joint returns with her husband. Hereinafter, references to "petitioner" are to John B. Moody. Pursuant to the provisions of sections 6653(b) and 6501(a), the respondent has conceded that Mary Moody is not liable for the deficiencies or additions to the tax for fraud for the taxable years 1955, 1956, 1958 and 1959. With respect to the years 1956, 1957, 1958 and 1959, petitioner has conceded that he is collaterally estopped to deny fraud by virtue of his conviction for income tax evasion under section 7201 for those years. ↩
4. In docket No. 1939-70, John B. Moody is the sole petitioner. ↩
5. United States v. Moody, 339 F.2d 161↩ (C.A. 6, 1964). 6. United States v. Moody, 371 F.2d 688↩ (C.A. 6, 1967). 7. Moody v. United States, 386 U.S. 1003↩ (1967). 8. United States v. Moody, 395 F.2d 670↩ (C.A. 6, 1968). 9. Moody v. United States, 391 U.S. 916↩ (1968). 10. Petitioner contests only four of the foregoing adjustments: The amount of total deposits in 1955; the amount of professional expenses paid in cash in each year; the amount of cash paid on an automobile in 1956; and the increase in cash on hand in 1959. ↩
11. At the time of the trial Eddie Adkins was alive and residing in Dyersburg, Tennessee. He was not called as a witness. ↩
12. Mr. J. P. Roberts, who was associated with Roberts Chevrolet Company at the time of this transaction, testified that in the ordinary course of his business the item would not have been entered on the invoice as cash unless cash had actually been received. He also testified that Dr. Moody had been overcharged approximately $300 on the purchase of a car, which had been refunded to petitioner within approximately 60 days after its purchase. ↩
13. Cost of carpet of $661.65, plus installation of $132.33 equals $793.98 which when amortized over a ten-year useful life results in the claim of $79.40. ↩
14. Mr. Adkins' testimony is noted by the Court of Appeals in the appeal from petitioner's second conviction. See United States v. Moody, 371 F.2d 688↩ (C.A. 6, 1967).