[Cite as *State v. Smith*, 2016-Ohio-7566.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15CAA 0077 |
| ERIC L. SMITH | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING: Criminal appeal from the Delaware County
Court of Common Pleas, Case No. 15CR-
I04-0144C


JUDGMENT: Affirmed


DATE OF JUDGMENT ENTRY: October 28, 2016

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

CAROL O'BRIEN                                   ERIC ALLEN
ANDREW BIGLER                                   4605 Morse Road, Suite 201
140 North Sandusky Street                       Gahanna, OH  43230
Delaware, OH 43015

*Gwin, J.,*

{¶1} Appellant Eric Smith "[Smith"] appeals his convictions and sentences after a jury trial in the Delaware County Court of Common Pleas on one count of aggravated burglary, a felony of the first degree, in violation of RC. 2911.11 (A) (2), with a firearm specification, a repeat violent offender specification and a forfeiture specification; one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01, with a firearm specification, a repeat violent offender specification and a forfeiture specification; one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01 (A) (1), with a firearm specification, a repeat violent offender specification and a forfeiture specification; one count of having weapons under disability, a felony of the third degree, in violation of R.C. 2923.13 (A)(2); one count of  aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01 (A) (1), with a firearm specification, a repeat violent offender specification and a forfeiture specification; one count of felonious assault, a second degree felony, in violation of R.C. 2903.11 (A) (2), with a firearm specification, a repeat violent offender specification and a forfeiture specification; and one count of having weapons under disability, a felony of the third degree, in violation of R.C. 2923.13 (A) (2).

*Facts and Procedural History*

{¶2} On January 3, 2015, and into the morning of January 4, 2015, two individuals broke into the home of David McCourt.  They bound him with zip tie handcuffs and laid him down in front of his television.  These two people took cash, five guns, and a Rolex watch.  McCourt waited until he was sure that the people who broke into his home were gone.  He then went to the Powell Police Department and could not find anyone there.  McCourt is seen on the surveillance tape at the police department at around 5:00

a.m. (2T. at 234-235). He leaves and goes to a friend's house in Grove City, Ohio. He buys a new cell phone and calls the police. He delayed in calling the police because he was taking bets on a 12:30 p.m. game. (2T. at 228). The police respond to his home in Delaware County and begin an investigation. McCourt could not identify anyone who robbed him on that day.

{¶3} McCourt testified that $33,000.00 and a Rolex watch were among the items taken from his home on January 3, 2015. McCourt further testified that one of the assailants had a revolver and the other a semi-automatic handgun with a long magazine or clip. McCourt described the offenders as one being taller and one shorter, that the assailants wore all black/dark clothing, hoods, masks and gloves, and stated the offenders from the second incident appeared to be the same as from the first (2T. at 188; 190; 3T. at 358; 361).

{¶4} Dennis Waddell testified that in connection with the first incident on January 3, 2015, he provided Smith with the victim's address. Smith's cousin, Wayne Kelso, is seen on the surveillance tape on January 5, 2015, one day after the first incident, trying to pawn McCourt's Rolex watch. Waddell testified that it was Smith who drove him and Kelso to the pawnshop. (4T. at 562). Smith purchased a Dodge Charger for $6,145.00 in cash on January 26, 2015. (4T. at 586). Smith spends $12,000.00 over the course of two days after the first incident and leading up to the second incident. McCourt testified that the money taken from his house was in $100.00 bills. (3T. at 373). $1,000.00 in $100.00 bills was recovered from Smith's car. (4T. at 580).

{¶5}    Smith was pulled over for a traffic violation on March 16, 2015.  The officer observed flex ties formed as handcuffs, gloves, and a ski mask in Smith's car.  (2T. at 257; 263).

{¶6}    On March 27, 2015, two individuals again break into Mr. McCourt's home in Delaware County, Ohio.  This time McCourt is pistol-whipped in his front yard.  McCourt attempted to shoot his attackers but the gun jammed.  McCourt runs to his neighbor's home and calls 9-1-1.

{¶7}    Smith, Tammy Wright and Dennis Waddell are all caught together moments after the second incident, within a mile of the McCourt's home with black ski masks, a Glock handgun with an extended magazine, and zip ties formed as handcuffs in a vehicle fitting the description McCourt gave to officers.  (3T. at 362; 390; 412-420; 433-437; 456-458).  Waddell testified that Smith showed him a black revolver on the way to the McCourt's home on March 27, 2015.  (4T. at 515).

{¶8}    Tammy Wright testified she picked up both Waddell and Smith and drove them to McCourt's neighborhood on March 27, 2015.  (3T. at 409-415). Wright was driving a green Jeep Cherokee.  She observed Smith and Waddell get out of a Dodge Charger. Both Waddell and Smith were dressed in black from head to toe.  (3T. at 415).

{¶9}    Smith and Waddell each called Wright to pick them up after the incident.  (3T. at 418-419).  Smith and Waddell were not at the same location when she picked them up. (3T. at 419-420).  A .40 caliber Glock with a long magazine was recovered from Wright's Jeep Cherokee.  (3T. at 442; 452).  Waddell admitted that he had a Glock handgun with an extend magazine.  (4T. at 514).

{¶10} McCourt gave a description of guns used in the first and second robbery. That description is similar to the gun that witnesses testified Smith had on him and similar to the gun found in the vehicle after the second incident. (2T. at 195-196; 3T. at 358-359; 1T. at 514-515).

{¶11} Following deliberation, the jury found Smith guilty of all charges and specifications in the indictment.

{¶12} The trial court sentenced Smith on count one to eight years in addition to the three-year firearm specification. As to count two, Smith was sentenced to five years in addition to the three-year gun specification. As to count three, Smith was sentenced to a term of three years in prison to be served concurrently with count one. As to count five, Smith was sentenced to a term of twelve months in prison. This is to be served concurrently with count one. As to count six, Smith was sentenced to a term of nine years to be served consecutive to counts one and two as well as an additional three-year gun specification. As to count seven, Smith was sentenced to a term of six years to be served consecutively to counts one, two, and six. He was also sentenced on a firearm specification.

*Assignments of Error*

{¶13} Smith raises nine assignments of error,

{¶14} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED HIS REQUEST FOR A CONTINUANCE.

{¶15} "II. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND SIXTH AMENDMENTS TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT WHEN IT DENIED HIS REQUEST FOR A CONTINUANCE.

{¶16} "III. THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE FIFTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT WHEN IT LIMITED CROSS-EXAMINATION REGARDING GAMBLING OF THE PROSECUTING WITNESS.

{¶17} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED TESTIMONY REGARDING BAD ACTS EVIDENCE AGAINST THE APPELLANT.

{¶18} "V. THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AMENDMENT MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT WHEN IT ALLOWED OTHER ACTS EVIDENCE TO BE PRESENTED.

{¶19} "VI. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT.

{¶20} "VII. THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT IN VIOLATION OF THE FOURTEENTH AMENDMENT AND IN DIRECT VIOLATION OF THE HOLDING OF *JACKSON V. VIRGINIA*.

{¶21} "VIII. THE CONVICTIONS IN THIS MATTER WERE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} "XI. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE SENTENCES AS THE COURT FAILED TO ENGAGE IN THE REQUISITE THREE PART ANALYSIS REQUIRED TO SENTENCE A DEFENDANT TO CONSECUTIVE

SENTENCES BY FAILING TO FIND THAT ANY OF THE THREE FACTORS LISTED IN 2929.14(C)(4)(a)-(c) APPLIED."

I. & II.

{¶23} In his first assignment of error, Smith contends the trial court abused its discretion in denying his attorney's request for a continuance made the morning of trial. In his second assignment of error, Smith argues that the trial court violated his right to due process by denying counsel's request for a continuance made the morning of trial.

{¶24} Ordinarily a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921(1964). If, however, the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of due process. *Bennett v. Scroggy*, 793 F.2d 772 (6th Cir 1986). A defendant has an absolute right to prepare an adequate defense under the Sixth Amendment of the United States Constitution and a right to due process under the Fifth and Fourteenth Amendments. *United States v. Crossley*, 224 F.3d 847, 854(6th Cir. 2000). The United States Supreme Court has recognized that the right to offer the testimony of witnesses and compel their attendance is constitutionally protected. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019(1967). The Ohio Supreme Court recognized that the right to present a witness to establish a defense is a fundamental element of due process of law. *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 4-5, 511 N.E.2d 1138(1987). A trial court's failure to grant a continuance to enable a defendant to exercise his constitutionally protected right to offer the testimony of witnesses and compel their attendance may, in some circumstances, constitute a denial

of due process. *Mackey v. Dutton*, 217 F.3d 399, 408(6th Cir 2000); *Bennett v. Scroggy*, supra, 793 F.2d at 774. See also, *State v. Wheat*, 5th Dist. Licking No. 2003-CA-00057, 2004-Ohio-2088 at ¶ 16.

**{¶25}** Among the factors to be considered by the court in determining whether the continuance was properly denied are: (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel and court, (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived", (5) whether the defendant contributed to the circumstances giving rise to the request, (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case, and (7) the complexity of the case. *Powell v. Collins*, 332 F.3d 376, 396(6th Cir 2003); *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078(1981), 1080; *State v. Wheat*, *supra* at ¶ 17.

**{¶26}** On a petition for habeas corpus relief, the federal courts have enumerated a slightly different set of factors that a reviewing court should consider in determining whether an accused was deprived of his rights to compulsory process and due process of law by denial of a motion for continuance: "[1] the diligence of the defense in interviewing witnesses and procuring their testimony within a reasonable time, [2] the specificity with which the defense is able to describe their expected knowledge or testimony, [3] the degree to which such testimony is expected to be favorable to the accused and [4] the unique or cumulative nature of the testimony." *Hicks v. Wainwright*, 633 F.2d 1146, 1149(5th Cir 1981) *(quoting United States v. Uptain*, 531 F.2d 1281, 1287(5th Cir 1976); *see, also, Bennett v. Scroggy*, *supra*, 793 F.2d at 774; *State v. Wheat*, *supra* at ¶ 18.

{¶27} In the case at bar, defense counsel received the allocution of co-defendant Tammy Wright the day before trial. Defense counsel conceded that that was proper and no continuance was requested. Counsel's request was because Mr. Waddell decided to accept a plea offer the day of trial. Smith's attorney was present when Waddell made his allocution.

{¶28} The trial court noted, "But we've all heard the statement from Mr. Waddell this morning, I can't imagine there's information in there that was surprising to anyone, certainly it was news to me but that's to be expected, but in terms of parties who have looked at discovery in the case, I didn't get the sense that anything that Mr. Waddell said was unexpected today." 1T. at 21.

{¶29} The Court further stated that there was 15-20 witness present for trial, the parties knew about the trial date for a while, and that the Court had a very busy trial docket, thus causing inconvenience to the witnesses, jurors and the court. Furthermore, there had already been two continuances granted in the case, as well as a brief recess granted before trial to allow Smith to decide if he wanted to proceed or take a plea deal.

{¶30} Smith's defense counsel in her motion failed to show how another continuance would allow her to effectively prepare for trial or that denying a continuance would prejudice Smith. In addition, Dennis Waddell had been a codefendant since the start of the case. As the Court stated, the possibility that a co-defendant could become a witness is a possibility at any point.

{¶31} As evidenced in the transcript, it appears that defense counsel was provided a copy of the transcribed allocution of Dennis Waddell. (4T. at 534-540). In addition, she in fact was able to effectively cross Mr. Waddell on his inconsistent statements. Counsel

effectively crossed examined Waddell regarding prior violent convictions and participation in illegal activities, all factors the jury could consider in weighing Mr. Waddell's testimony.

**{¶32}** There is no evidence that more time would have better prepared defense counsel in cross-examining Mr. Waddell or would have uncovered exculpatory evidence on Smith's behalf. Smith has failed to demonstrate how the failure to grant the continuance actually prejudiced his defense.

**{¶33}** After careful examination of the record, we find that the trial court did not abuse its discretion in denying Smith's request for a continuance. The trial court had an interest in controlling its own docket and ensuring the prompt and efficient administration of justice. *See Unger*, 67 Ohio St.2d at 67, 423 N.E.2d 1078. The trial court clearly felt that competent counsel adequately represented Smith and that there was no reason to delay the trial. As such, we find that the trial court did not abuse its discretion when it denied the motion to continue the trial and we find no violation of Smith's due process rights.

**{¶34}** Smith's first and second assignments of error are overruled.

III.

**{¶35}** In his third assignment of error, Smith contends the trial court did not allow questioning into whether or not the victim, David McCourt, violated the law by taking bets or running a casino therefore denying his right to confront his accuser as guaranteed by the Sixth Amendment. [Appellant's Brief at 12].

**{¶36}** Smith's cites the following exchange to support his argument that the trial court limited his cross-examination,

Q — because you were embarrassed to divulge into your illegal activity such as gambling?

MR. BIGLER:          Objection.

MR. PENKAL:          Objection.

THE COURT:          Well.

PENKAL:          As to the commentary.

THE COURT:          I don't think the witness made any testimony about the activity being illegal.

MS. SHARP BERNARDO: I will rephrase, Your Honor.

3T. at 379-380.

{¶37}  The Sixth Amendment of the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 353, 94 S.Ct. 1105, 39 L.Ed.2d 347(1974).  That right, incorporated in the Fourteenth Amendment and therefore available in state proceedings under *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923(1965) includes the right to conduct reasonable cross-examination.  *Davis*, 415 U.S. at 315-316, 94 S.Ct 1105, 39 L.Ed.2d 347.

Reasonable cross-examination includes not only the opportunity to impeach a witness: "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory,

but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness". *Davis*, 415 U.S. at 316, but also the exposure of a witness' motivation in testifying: 'A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence Section 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [415 U.S. 317]".

*Greene v. McElroy*, 360 U.S. 474, 496, 3 L.Ed. 2d 1377, 79 S.Ct. 1400(1959). *See also*, *Davis*, 415 U.S. at 316-317; Olden *v. Kentucky*, 488 U.S. 227, 109 S.Ct. 48, 102 L.Ed.2d 513(1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶38} Of course, a trial court can impose reasonable limits upon cross-examination:

It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based

on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.    And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292 (per curiam) (emphasis in original).

*Van Arsdall*, supra, 475 U.S. at 679.

{¶39}  In determining whether the confrontation clause has been violated, the focus of the prejudice inquiry "must be on the particular witness, not on the outcome of the entire trial."  *Van Arsdall*, supra 475 U.S. at 680.  In *Van Arsdall*, *supra*, the United States Supreme Court held: "[w]e think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness. *Davis v. Alaska*, *supra*, at 318, 94 S.Ct. 1105."  *Van Arsdall*, supra at 475 U.S. 680; *See, also*, *Olden*, *supra*.

{¶40}  In *Van Arsdall*, *supra*, the Court stated,

The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host

of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. *Harrington,* 395 U.S., at 254, 23 L.Ed. 2d 284, 89 S.Ct. 1726; *Schneble v. Florida*, 405 U.S. at 432, 31 L.Ed. 2d 340, 92 S.Ct. 1056.

*Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431, 89 L.Ed.2d 674.

**{¶41}** In the case at bar, the trial court simply noted that the witness had not "made any testimony about the activity being illegal." The trial court did not issue a blanket prohibition against his testimony concerning gambling or other illegal activity.

**{¶42}** In any event, Smith cannot show that he was prejudiced by the trial court's ruling because McCourt testified on direct and cross examination regarding his gambling operation. McCourt disclosed that he would take bets from wealthy individuals, and either pay them if they won, or keep the money if they lost. McCourt admitted not wanting the police to search his home without him there, admitted he lied to police about how much money was taken because he did not want to disclose his gambling operation, and admitted he sought the advice of his attorney regarding what police may find regarding his gambling operation. 2T. at 201-202; 221-222; 228; 332; 3T. at 380-381.

**{¶43}** We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless,

we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967).

**{¶44}**  In the case at bar, the trial court did not restrict Smith from cross-examining McCourt on his gambling activities. We find that any error was harmless beyond a reasonable doubt.

**{¶45}**  Smith's third assignment of error is overruled.

IV. & V

**{¶46}**  In his fourth assignment of error, Smith argues that the trial court violated Evid.R. 404(B) by allowing Dennis Waddell to testify to prior acts of theft by Smith.  In his fifth assignment of error, Smith argues that he was denied due process by the admission of other acts evidence.

**{¶47}**  The trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B). *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. Unless the trial court has "clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere" with the exercise of such discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). We have defined "abuse of discretion" as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

**{¶48}** During the first incident, significant amounts of cash were taken from McCourt's home of approximately $33,000.00.  In the case at bar, Smith made large, all cash purchases of approximately $12,000.00 immediately after the first incident.  Smith's purchases continued until

right up until the second incident. At trial, the defense attempted to counter the state's argument that the money Smith used was stolen. The defense portrayed Smith as a hard working individual, who came into this cash through legitimate means, and that the timing was merely coincidental. The state argued that the defense had opened the door to ask the witness if he was aware of how Smith made money.

{¶49} Upon voir dire of Waddell outside the presence of the jury, Waddell testified about Smith stealing packages and selling them.

{¶50} The trial court agreed with the state that the defense had opened the door to this line of questioning.

{¶51} Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶52} In *State v. Williams,* 134 Ohio St.3d 521, 983 N.E.2d 1278, 2012–Ohio–5695, the Ohio Supreme Court stated that trial courts should conduct a three-step analysis when considering the issue of "other acts" evidence:

> The first step is to consider whether the other acts evidence is relevant to
> making any fact that is of consequence to the determination of the action more or
> less probable than it would be without the evidence. Evid.R. 401. The next step is
> to consider whether evidence of the other crimes, wrongs, or acts is presented to

prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

Id. at ¶ 20.

{¶53} Furthermore, "other acts" evidence is admissible only if there is substantial proof that the alleged other acts were committed by the defendant and such evidence tends to show one of the matters enumerated in Evid.R. 404(B). *State v. Wagner*, 5th Dist. Licking 03 CA 82, 2004–Ohio–3941, ¶ 43, *citing State v. Echols*, 128 Ohio App.3d 677, 692, 716 N.E.2d 728 (1st Dist. 1998). This Court has recognized that the Ohio Revised Code does not define "substantial proof" in this context. *See State v. Burden*, 5th Dist. Stark No. 2012–CA–00074, 2013–Ohio–1628, ¶ 58. This Court also summarized as follows in *State v. King*, 5th Dist. Richland No. 08–CA–335, 2010–Ohio–4844: "We * * * do not believe that the substantial proof requirement necessitates that independent evidence corroborate other acts testimony. Instead, we believe that the substantial proof requirement is satisfied if at least one witness who has direct knowledge of the other act can testify to the other act. The jury may then fulfill its duty and evaluate the witness's testimony and credibility. * * *." Id. at ¶ 45.

{¶54} In the case at bar, the state did not submit evidence of Smith's prior acts to show Smith acted in conformity with his prior behavior. Rather, the evidence was submitted to counter the impression that Smith came into substantial sums of money through legitimate means.

{¶55} In *State v. Dunivant*, Stark App. No. 2003CA00175, 2005-Ohio-1497, the Ninth District Court of Appeals, sitting by assignment for this Court, provided a detailed analysis of the issue sub judice:

"Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth* (C.A.9, 1988), 856 F.2d 1268, 1285. *See, also, United States v. Moody* (C.A.6, 1967), 371 F.2d 688, 693 ("With the door opened this widely in favor of [defendant], we cannot say that the District Judge's rulings in favor of appellee's proffered hearsay on the same subject was an abuse of judicial discretion or constituted reversible error."); *State v. Croom* (Jan. 18, 1996), 8th Dist. No. 67135, at *17 ("Invited error would preclude a defense counsel who induces hearsay evidence on cross-examination from precluding further hearsay testimony on re-direct examination.").

*Dunivant,* ¶12. *Accord, State v. Scott,* 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶42; *State v. Collins,* 7th Dist. Columbiana No. 10 CO 10, 2011-Ohio-6365, ¶93.

{¶56} In the case at bar, the defense first presented its theory in opening statement stating,

The State is going to try to have you believe that my client, Eric Smith, is not a hard working individual, when in fact that is far from the truth. Specifically, my client has two jobs. He does manual labor through a janitorial service, has been working there over two years, and independently

sells electronics to try to make extra money to provide for himself and his family.  The State's going to try and argue that it is not merely coincidental that my client did purchase a car after the alleged incidents of January 4, 2014.  However, we stand before you stating that hard earned money through hard work is not illegal to purchase a vehicle.  Just because someone buys a vehicle with cash does not mean that that vehicle was purchased through any ill-gotten gains.

1T. at 171.

{¶57}  In addition, the defenses sole witness, Nitoryia Goff, also offered testimony regarding the legitimate means through which Smith came into possession of large amounts of cash.  5T. at 705-710.  Ms. Goff testified to Smith's IRS Form 1099's for the 2013 and 2014 tax years.  (5T. at 706-707).  Further, Goff testified to Smith's 2013 and 2014 tax returns.  (5T. at 707-708).  Smith had reported income in the 2014 tax year of $11,873.00 (5T. at 716-717; 720).  However, the tax return presented at trial had not been signed.  (5T. at 720).  Smith also made money from selling a car.  (5T. at 711).  Goff testified that Smith made money from repairing and selling electronics, and that income was not reported on his tax returns.  (5T. at 708-711).

{¶58}  Furthermore, the trial court gave a specific limiting instruction to the jury that the evidence regarding the theft of packages should be used only for the specific purpose of determining whether, "the Defendant had significant amounts of cash in the early months of this year and what the source of that cash may have been, whether from legitimate employment or something else."  4T. at 563.  The Court further admonished

that the evidence was not to be considered for purposes of showing Smith acted in conformity or in accordance with that character.  (Id.).

**{¶59}**  We cannot conclude that the trial court abused its discretion by allowing the state, on re-direct examination to elicit reciprocal evidence in order to rebut the impression that may have resulted.  If the state were not permitted to do so, the jury would have been left with the impression that Smith's possession of large sums of cash and the purchases he made were obtained through legitimate sources and merely coincidental to the incidents involving McCourt.  We do not find that the trial court's ruling was erroneous.  Accordingly, Smith was not denied of fundamental fairness.  *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

**{¶60}**  Smith's fourth and fifth assignments of error are overruled.

VI.

**{¶61}**  In his sixth assignment of error, Smith argues that he was denied the effective assistance of trial counsel.  Specifically, Smith contends his trial counsel was ineffective because she opened the door to the other acts evidence addressed in Smith's fourth and fifth assignments of error.

**{¶62}**  A claim of ineffective assistance of counsel requires a two-prong analysis.  The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant.  The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.  *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶63}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶64}** Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the

record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

**{¶65}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

**{¶66}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49,

402 N.E.2d 1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008 at ¶ 21.

{¶67} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio–171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980)(*quoting United States v. Denno,* 313 F.2d 364 (2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶68} Even assuming that Smith could demonstrate that defense counsel performed deficiently, he must also prove that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See, State v. Obermiller,* Oh. Sup. Ct. No. 2011-0857, 2016-Ohio-1594, ¶ 93 (Apr. 20, 2016).

{¶69} To show prejudice, he must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The prejudice inquiry, thus, focuses not only on outcome determination, but also on "whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶70} In determining whether Smith has indicated a reasonable probability sufficient to undermine confidence in the outcome of the trial we find it helpful to look to

the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence.

{¶71} In *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, the Ohio Supreme Court considered the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence under Evid.R. 404(B). The court summarized its analysis in the subsequent decision of *State v. Harris*, 2015-Ohio-166, —— N.E.3d ——, ¶ 37:

> Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A). Id. at ¶ 22–24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Id. at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Id. at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

Id. at ¶ 29, 33.

{¶72} There is no indication in light of the overwhelming evidence of Smith's guilt that the jury abandoned their oaths and their integrity and found Smith guilty of the crimes because of the testimony concerning his prior acts of stealing packages and selling them for money.

{¶73} In any case, the evidence overwhelmingly supports a finding of Smith's guilt. Smith cannot claim that but for these statements, he would be acquitted. After a thorough review of the record, we have no doubt that the remaining properly introduced evidence overwhelmingly establishes defendant's guilt. *See Delaware v. Van Arsdall* (1986), 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674; *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323.

{¶74} Smith's sixth assignment of error is overruled.

VII. & VIII.

{¶75} In his seventh assignment of error, Smith challenges the sufficiency of the evidence. In his eighth assignment of error, Smith contends his conviction is against the manifest weight of the evidence produced at trial.

{¶76} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶77}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶78}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶79}** Specifically Smith's main argument is that there was insufficient evidence to identify him as one of the perpetrator of the crimes.

**{¶80}** McCourt testified that $33,000.00 and a Rolex watch were among the items taken from his home on January 3, 2015. McCourt further testified that one of the assailants had a revolver and the other a semi-automatic with a long magazine or clip. McCourt gave a description of the offenders being one taller and one shorter, that the assailants wore all black/dark clothing, hoods, masks and gloves, and stated the offenders from the second incident appeared to be the same as from the first (2T. at 188; 190; 3T. at 358; 361). McCourt gave a description of guns used in the first and second robbery, similar to the ones testified at trial that Smith had on him and similar to the one found in the vehicle after the second incident. (2T. at 195-196; 3T. at 358-359; 1T. at 514-515).

{¶81}  Dennis Waddell testified that in connection with the first incident on January 3, 2015, he provided Smith with the victim's address.  Smith's cousin, Wayne Kelso, is seen on the surveillance tape on January 5, 2015, one day after the first incident, trying to pawn the victim's watch.  Waddell testified that it was Smith who drove him and Kelso to the pawnshop.  (4T. at 562).  Smith spends over the course of two days after the first incident and leading up to the second incident, approximately $12,000.00 in cash, including the purchase of the Dodge Charger for $6,145.00 in cash on January 26, 2015.  (4T. at 586).  $1,000.00 in $100.00 bills was recovered from the car.  (4T. at 580).  McCourt testified that the money taken from his house was in $100.00 bills.  (3T. at 373).

{¶82}  Smith was pulled over for a traffic violation on March 16, 2015, after the first incident and just prior to the second incident, with flex ties formed as handcuffs, gloves, and a ski mask found in his car.  (2T. at 257; 263).

{¶83}  Tammy Wright and Dennis Waddell, who both place Smith at the second incident, are all caught together moments after the second incident, within a mile of the McCourt's home with black ski masks, a Glock with an extended magazine, zip ties formed as handcuffs, in a vehicle fitting the description McCourt gave to officers. (3T. at 362; 390; 412-420; 433-437; 456-458). Waddell testified that Smith showed him a black revolver on the way to the McCourt's home on March 27, 2015.  (4T. at 515).  Waddell admitted that he had a Glock 9 with an extend magazine.  (4T. at 514).

{¶84}  Tammy Wright testified she picked up both Waddell and Smith and drove them to McCourt's neighborhood on March 27, 2015.  (3T. at 409-415).  Both Waddell and Smith were dressed in black from head to toe.  (3T. at 415).  Smith and Waddell each called Wright after the incident.  (3T. at 418-419).  Smith and Waddell were not at the same location

when she picked them up. (3T. at 419-420). A .40 caliber Glock with a long magazine was recovered from Wright's Jeep Cherokee. (3T. at 442; 452).

{¶85} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* , 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶86} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Smith participated in both the January 3, 2015 and the March 27, 2015 incidents at McCourt's home and that he had a firearm on his person during each incident.

{¶87} We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support Smiths convictions.

{¶88} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶89} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact

finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶90}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶91}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State*

*v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

**{¶92}** In the case at bar, the jury heard the witnesses, viewed the evidence and heard Smith's arguments concerning the lack of evidence and non-believability of the state's witnesses.

**{¶93}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Smith of the charges.

**{¶94}** Based upon the foregoing and the entire record in this matter, we find Smith's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Smith's witnesses and his arguments. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Smith's guilt.

**{¶95}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Smith was convicted.

**{¶96}** Smith's seventh and eight assignments of error are overruled.

IX.

**{¶97}** In his ninth assignment of error, Smith challenges the imposition of the consecutive terms on the ground that the trial court failed to make the findings required by R.C. 2929.14(C)(4).

**{¶98}** The two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. We now review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum,* __Ohio St.3d__, 2016–Ohio–1002, __N.E.3d ___, ¶22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

**{¶99}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing

court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

{¶100} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶23. This statute requires the trial court to undertake a three-part analysis. *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

{¶101} R.C. 2929.14(C)(4) provides,

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish **665 the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of

the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶102} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

{¶103} Recently, in *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, syllabus, the Supreme Court of Ohio stated that:

In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.

{¶104} Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Bonnell*, ¶29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Bonnell,* ¶34. The findings required by R.C. 2929.14(C)(4) must be made at the sentencing hearing and included in the sentencing entry. Id. at the syllabus. However, a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court. *Bonnell,* ¶30.

{¶105} In this case, the record does support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**R.C. 2929.14(C)(4): [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive**

**sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.**

{¶106} At sentencing the trial court found,

I do find that consecutive sentences are necessary to protect the public from future crime and to punish the Defendant, and consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger that he poses to the public, and I also find that, of course, two of these multiple offenses were committed as part of one course of conduct, and the harm caused by the two offenses was so great and so unusual that no single prison term for any one offense committed would adequately reflect the seriousness of his conduct, and also the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime.

Sent. T. at 19-20. The findings are reflecting in the court's sentencing entry. *Judgment Entry on Sentence,* filed September 16, 2015 at 5-6.

**R.C. 2929.14(C)(4)(a): The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

{¶107} This provision does not apply to Smith's case.

**R.C. 2929.14(C)(4)(b): At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison**

**term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

{¶108} In the case at bar, the trial court found,

> I also find that, of course, two of these multiple offenses were committed as part of one course of conduct, and the harm caused by the two offenses was so great and so unusual that no single prison term for any one offense committed would adequately reflect the seriousness of his conduct, and also the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime.

Sent. T. at 19-20. The findings are reflecting in the court's sentencing entry. *Judgment Entry on Sentence,* filed September 16, 2015 at 5-6.

**R.C. 2929.14(C)(4)(c): The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

{¶109} As noted above, the trial court made this finding on the record and in the sentencing entry.

{¶110} The trial court further found,

> 1. The Defendant has a history of criminal convictions.

> 2. He has failed to respond favorably in the past to sanctions for criminal convictions.

> 3. The victim suffered serious physical, psychological, and economic harm as a result of the Defendant's actions.

4. The offenses were committed as part of organized criminal activity.

5. The offenses do not merge, and the Defendant can and should be sentenced separately on each of the charges for which he was found guilty by the jury.

*Judgment Entry on Sentence,* filed September 16, 2015 at 2; Sent. T. at 15-17. The trial court heard three days of testimony and considered a pre-sentence investigation report.

{¶111} We find that the record in the case at bar clearly and convincingly supports the trial court's findings under 2929.14(C)(4).

{¶112} Smith's ninth assignment of error is overruled.

{¶113} The judgment of the Delaware County Court of Common Pleas, Delaware County, Ohio is affirmed.

By Gwin, J.,

Farmer, P.J., and

Delaney, J., concur